IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD C. SKIPPER, as Personal Representative of the ESTATE OF GEORGE W. SKIPPER, III and RICHARD C. SKIPPER, as Personal Representative of the ESTATE OF HELEN O'MELIA. SKIPPER** | )<br>)<br>)<br>)  CIVIL ACTION NO.: 22-272<br>)<br>)<br>) |

**Plaintiff,**

v.

**UNITED STATES OF AMERICA,**

**Defendant.**

## COMPLAINT

Plaintiff, Richard C. Skipper, as Personal Representative of the Estate of George W. Skipper, III and as Personal Representative of the Estate of Helen O'Melia Skipper, for his Complaint against the United States of America ("Defendant") alleges as follows:

## PARTIES

1. Plaintiff is a resident of Jackson, Alabama 36545-0606. At the time of their death, George W. Skipper, III and Helen O'Melia Skipper resided in Jackson, Alabama.

2. On May 4, 2020, the Last Will and Testament of Helen O'Melia Skipper was admitted to the Probate Court of Clarke County, State of Alabama as Case No. PC-20-043, and Plaintiff was appointed as Personal Representative of the Estate on February 15, 2022. A copy of the Letters Testamentary appointing Plaintiff as Personal Representative of the Estate of Helen O'Melia Skipper is attached hereto as **Exhibit A**.

3. On February 14, 2022, the Last Will and Testament of George W. Skipper, III was admitted to the Probate Court of Clarke County, State of Alabama as Case No. PC-22-021, and

Plaintiff was appointed as Personal Representative of the Estate on February 15, 2022. A copy of the Letters Testamentary appointing Plaintiff as Personal Representative of the Estate of George W. Skipper, III is attached hereto as **Exhibit B**.

4. Defendant is the United States of America.

## JURISDICTION AND VENUE

5. This is a suit arising out of the Internal Revenue Code of the United States ("Code") for the recovery of a tax refund which was wrongfully withheld by the IRS.

6. The Court has jurisdiction under 28 U.S.C. § 1346 and 26 U.S.C. § 7422 because the Plaintiff is seeking from the Defendant the recovery of tax wrongfully withheld from the Plaintiff, or from the estates of which he is the personal representative.

7. Venue is proper in this district under 28 U.S.C. § 1402 in that at all times material hereto, Plaintiff resided in this judicial district. Further, George W. Skipper, III (hereafter "George Skipper") and Helen O'Melia Skipper (hereafter "Helen Skipper") resided in this judicial district at the time of their deaths, and this is the judicial district where the act or omission complained of occurred (see 28 U.S.C. 1402(b)).

## FACTUAL BACKGROUND

8. On October 8, 2012, George Skipper filed for personal bankruptcy.

9. Pursuant to the IRS's published guidance regarding personal tax returns filed during bankruptcy, George Skipper and Helen Skipper (collectively, the "Skippers") filed a joint tax return for the period from January 1, 2012, through October 7, 2012, self-assessing a tax liability in the amount of ▮▮▮▮▮ and reporting total payments in the amount of ▮▮▮▮▮, resulting in an overpayment of ▮▮▮▮. Said tax return was timely filed and processed by the IRS ("Processed Return"). A copy of the Processed Return is attached hereto as **Exhibit C**.

10. As shown in **Exhibit D**, in conjunction with the filing of the Processed Return, the Skippers filed a second joint tax return which, due to George Skipper's bankruptcy filing on October 8, reported only Helen Skipper's income for the period from October 8, 2012 to December 31, 2012. Although this second joint tax return for 2012 was timely filed, for reasons unknown to the Skippers, the IRS failed to process the return ("Unprocessed Return"). The Unprocessed Return self-assessed a tax liability of ███████, and reported total payments of ███████, resulting in an additional overpayment of ███████.[1]

11. Collectively, the Skippers self-assessed ███████ in taxes and made ███████ in tax payments, resulting in a total overpayment for the 2012 tax year in the amount of amount of ███████ (the Processed Return overpayment of ███████, plus the Unprocessed Return overpayment of ███████).

12. For reasons unknown to the Skippers, and as shown on the Skippers' 2012 account transcripts attached hereto as **Exhibit E**, the total overpayment actually credited to the Skippers' 2012 account was increased by ███████, resulting in a total overpayment for the 2012 tax year in the amount of ███████.[2]

13. In lieu of being issued a refund, the Skippers instead elected to apply the 2012 overpayment towards their 2013 tax year ("2012 Rollover Amount").

14. For the 2013 tax year, the Skippers timely filed a joint tax return, attached hereto as **Exhibit F** ("2013 Return"). The 2013 Return self-assessed a tax liability of ███████ and reported total payments in the amount of ███████, consisting of the 2012 Rollover Amount

---

[1] After George Skipper's bankruptcy filing, his bankruptcy estate filed its own tax return for the short-year running from October 8, 2012 through December 31, 2012. George Skipper also filed an individual return for the same period to report his income within the bankruptcy estate. These two "bankruptcy returns" were both timely filed, received, and processed by the IRS, and have no direct bearing on the issue at hand.

[2] Although Line 68 of the Processed Return shows a ███████ payment made in connection with the Skippers' request for an extension to file, the 2012 transcript instead reports this amount to be ███████ (as credited on February 19, 2013).




([redacted]), a [redacted] tax payment made by the Skippers during the 2013 tax year, and an additional [redacted] paid by the Skippers in connection with the filing of an extension, resulting in an overpayment of tax in the amount of [redacted].

15. Like their 2012 Return, the Skippers elected to apply this [redacted] overpayment made in 2013 towards the Skippers' joint return for the 2014 tax year ("2013 Rollover Amount").

16. Thus, for both the 2012 and 2013 tax years, the Skippers timely filed their returns and fully paid all self-assessed tax liabilities. No further assessments were made by the IRS with respect to these tax years. Once the Processed Return and the 2013 Return were fully processed and the 2013 Rollover Amount was applied towards the 2014 tax year, the Skippers' 2012 and 2013 accounts were updated by the IRS to show a zero balance.

17. However, despite the Skippers' timely filing, the IRS failed and/or refused to account for the [redacted] self-assessed tax liability reported on the Unprocessed Return and the Skippers' timely payment thereof.

18. Because the IRS's system did not recognize the additional [redacted] reported as a tax liability on the Unprocessed Return, the Skippers' total overpayment for the 2012 tax year was thereby increased by this same [redacted] amount. This additional overpayment was also applied by the IRS towards the Skippers' 2013 tax year, creating a credit balance in the Skippers' previously zeroed-out 2013 tax account.

19. As shown on the Skippers' 2013 account transcript, attached hereto as **Exhibit G**, the IRS's system was unable to reconcile the discrepancy caused by the appearance of this new credit balance and generated a refund check on November 7, 2014, in the amount of [redacted], which was comprised of the [redacted] credit amount less a previously unpaid [redacted] penalty (the "Erroneous Refund").

20. Once the Skippers received the Erroneous Refund, they immediately notified the IRS that the Erroneous Refund had been issued in error, informed the IRS that the Unprocessed Return properly showed a matching tax liability, and returned the Erroneous Refund to the IRS.

21. For reasons unknown to the Skippers, the IRS failed to acknowledge the information provided by the Skippers or to reverse the Erroneous Refund and credit the Skippers' prior payment of the ▓▓▓▓ self-assessed tax liability reported on the Unprocessed Return.

22. As reflected on the Skippers' 2013 account transcript and discussed further below, a cycle began to repeat itself where the IRS would issue the Erroneous Refund to the Skippers and the Skippers would return the Erroneous Refund to the IRS. This back-and-forth with the IRS continued for approximately three years. During such time, the Erroneous Refund continued to accrue interest, eventually growing to ▓▓▓▓ as of September 29, 2017.

23. After numerous phone conferences with the IRS failed to resolve the issue, the Skippers' accountant sent a letter to the IRS dated October 16, 2017, attached hereto as **Exhibit H**, to provide additional information, to clarify the issues and timeline related to the Erroneous Refund and the Unprocessed Return, and return the Erroneous Refund check to the IRS.

24. Despite the Skippers' efforts to return the Erroneous Refund, the IRS again issued the Erroneous Refund to the Skippers on August 17, 2018, which had increased to ▓▓▓▓.

25. Frustrated with the IRS's failure or refusal to resolve the issue, the Skippers ultimately decided to deposit the Erroneous Refund check in September of 2018.

26. Almost immediately after the Skippers deposited the Erroneous Refund check in September 2018, the IRS suddenly changed its position, admitting that the Erroneous Refund was issued in error and demanding its return. The Skippers, however, refused to return the Erroneous Refund.

27. As shown on the IRS letters dated April 25, 2019 and June 12, 2019, attached hereto as **Exhibits I-J**, the IRS admitted its mistake in applying a credit to the Skippers' 2013 tax account, that the Erroneous Refund should not have been issued, and acknowledged the Skippers' prior attempts to return the Erroneous Refund. By this time, the amount of the Erroneous Refund had grown to ███████.

28. Unable to resolve the dispute over the Erroneous Refund, the Skippers filed their 2019 joint tax return, which reported an overpayment of tax in the amount of ███████ ("2019 Overpayment") and requested a refund from the IRS.

29. As shown on the IRS letter dated August 11, 2020, attached hereto as **Exhibit K**, the IRS wrongfully applied the 2019 Overpayment to the Skippers' 2013 tax year in a misguided effort to recover the Erroneous Refund despite there being no unpaid assessments outstanding and no reassessment of any additional tax for 2013.

30. The IRS took the position that the issuance of the Erroneous Refund resulted in an "unpaid assessment" for the 2013 tax year for which administrative offset is an appropriate collection action. However, such offset occurred without reassessing any tax for the 2013 tax year as required by the Code.

31. Although the Erroneous Refund does indeed represent "unpaid tax" in a general sense, under the Code and relevant case law, the Erroneous Refund is not an *unpaid assessment* subject to collection. In particular, the Erroneous Refund constitutes what it known as a "nonrebate erroneous refund," which arises from a true mistake on the part of the IRS – often in the form of a clerical or computer error.

32. Pursuant to ILM 199917062, issuing the Erroneous Refund cannot revive a previously paid tax assessment (including taxes self-assessed by the filing of a return), regardless

of whether the previous assessment was paid voluntarily or through seizure of a taxpayer's property. Additionally, it is well established that once a taxpayer has paid an assessed tax liability for a given tax year, a subsequent nonrebate erroneous refund issued by the IRS to a taxpayer does not render the original tax assessment unpaid. Unless the IRS properly assesses or reassesses the amount of tax that was erroneously refunded, it cannot use its right of offset or any other administrative collection procedure to recover the Erroneous Refund.

33. Further, under Code § 6402(a) and Chief Counsel Advice 200137051, as a nonrebate erroneous refund, the Erroneous Refund issued to the Skippers could only be recovered by the IRS in one of two ways. First, the IRS could have filed a refund suit against the Skippers pursuant to Code § 7405 within two years of issuing the Erroneous Refund. Second, the IRS could have reassessed the 2013 tax year within the three-year assessment period set forth in Code § 6501 and issue the Skippers a notice of deficiency and demand for payment under Code § 6303. If the IRS took such action and the Skippers failed to pay, the IRS would then be permitted to pursue its typical post-assessment collection procedures, which would include exercising its right to offset any other amounts payable to the Skippers from another tax year.

34. However, the IRS failed to properly reassess the Skippers' 2013 tax year within the three-year period under Code § 6501 or file an erroneous refund suit within the two-year statutory period required by Code § 7405. As a result, the IRS was prohibited from pursuing its post-assessment collection procedures, including the right to offset.

35. Plaintiff can demonstrate that all tax assessments in 2013 were fully paid and that no additional assessments were made by the IRS. As such, the IRS's exercise of its right of offset against the Skippers' 2019 Overpayment constituted an improper and wrongful method of collecting the Erroneous Refund.

36.     As shown on **Exhibit L**, on February 4, 2021, the Skippers' tax counsel submitted a Form 843 Claim for Refund and Request for Abatement requesting the IRS to refund the 2019 Overpayment to the Skippers, thereby commencing the six (6) month statutory period required to file a petition in U.S. District Court under Code § 6532(a)(1).

37.     The IRS has failed and/or refused to process or respond to the Skippers' request for a refund of the 2019 Overpayment within the six (6) month statutory period.

**COUNT ONE
DAMAGES PURSUANT TO
26 U.S.C. §7422 – CIVIL ACTIONS FOR REFUND**

38.     Plaintiff adopts and incorporates paragraphs 1 through 37 as if fully set out herein.

39.     The IRS's issuance of the Erroneous Refund cannot revive any of the Plaintiff's previously paid assessments.

40.     Because the IRS failed to timely reassess any tax for the 2012 and/or 2013 tax years, and failed to file a refund lawsuit for the Erroneous Refund within the required statutory period, the IRS is precluded from assessing and/or attempting to collect any tax, penalties, or interest with respect to any tax liabilities relating to the 2012 tax year or the 2013 tax year, and/or seeking any recovery of the Erroneous Refund. As such, the IRS's retention of the 2019 Overpayment to recover the Erroneous Refund constituted a wrongful exercise of the IRS's right of offset. Therefore, Plaintiff is entitled to a refund of ███████ for the 2019 Overpayment, together with all interest properly accrued thereon.

41.     Further, any taxes, penalties or interest claimed by the IRS for the 2013 tax year, together with all interest and penalties improperly accrued thereon, should be fully abated and removed.

42.     Plaintiff is the absolute owner of this claim against the Defendant and has made no assignment or transfer of any part thereof.

WHEREFORE, Plaintiff demands judgment in the amount of ▓▓▓▓ for the 2019 Overpayment, or such other amounts as may be legally refundable, plus interest as provided by law, for Plaintiff's costs, the abatement of any amounts still claimed as owing for the 2012 and/or 2013 tax years, and such other and further relief as this Court deems appropriate.

Respectfully submitted,

*/s/ Joseph J. Minus, Jr.*
JOSEPH J. MINUS, JR.
WILLIAM E. SHREVE, JR.
C. LUKE NIXON
*Attorneys for Plaintiff*

OF COUNSEL:
**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000
Mobile, Alabama 36602
Post Office Box 2727
Mobile, Alabama 36652
251 432 4481
Jay.Minus@phelps.com
William.Shreve@phelps.com
Luke.Nixon@phelps.com

*/s/ Robert M. Ritchey   (with permission)*
ROBERT M. RITCHEY
JOHN GEORGE ARCHER

OF COUNSEL:
**GILPIN GIVHAN, PC**
2600 EastChase Lane, Suite 300
Montgomery, Alabama 36117
Post Office Drawer 4540
Montgomery, Alabama 36103-4540
(334) 244-1111
rritchey@gilpingivhan.com
jarcher@gilpingivhan.com

**DEFENDANT MAY BE SERVED BY CERTIFIED MAIL RETURN RECEIPT REQUESTED AS FOLLOWS:**

The Honorable Sean P. Costello
U.S. Attorney for the Southern District of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602

Department of the Treasury
Internal Revenue Service
Austin, TX 73301-0025

The Honorable Merrick B. Garland
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001